# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

CR 11 0625

~~SEALED~~ UNITED STATES OF AMERICA,

~~BY COURT ORDER~~ V.

CRB

BASSAM YACOUB SALMAN
a/k/a
Bassam Jacob Salman

DEFENDANT(S).

---

## INDICTMENT

18 U.S.C. § 371- Conspiracy
15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, 240.10b5-1
and 240.10b5-2, 18 U.S.C. § 2 (Securities Fraud)

A true bill.

_____ Foreman

Filed in open court this ___1st___ day of
___September___.

~~NO BAIL WARRANT~~
Ada Means _____ Clerk

Bail, $ _____

Jacqueline Scott Corley
United States Magistrate Judge

PER 18 U.S.C. 3170

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ INFORMATION  ☑ INDICTMENT

Matter Sealed: ☐ Juvenile  ☑ Other than Juvenile
☐ Pre-Indictment Plea  ☐ Superseding  ☐ Defendant Added
☐ Indictment  ☐ Charges/Counts Added
☐ Information

Name of District Court, and/or Judge/Magistrate Location (City)
UNITED STATES DISTRICT COURT
DISTRICT OF Northern California     San Francisco Divisional O...

Name and Office of Person Furnishing Information on THIS FORM: MELINDA HAAG
☐ U.S. Atty  ☐ Other U.S. Agency
Phone No.

Name of Asst. U.S. Attorney (if assigned): Adam A. Reeves

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court (give name of court)

☐ this person/proceeding transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. Atty  ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant. (Notice of Related Case must still be filed with the Clerk.)

☐ prior proceedings or appearance(s) before U.S. Magistrate Judge regarding this defendant were recorded under

SHOW DOCKET NO.

MAG. JUDGE CASE NO.

Place of offense ____ County ____

CASE NO.
USA vs. Bassem Yacoub Salman
Defendant:
Address:

CR 11 - 625 CRB

FILED SEP -1 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

☐ Interpreter Required  Dialect: ____

Birth Date ____   ☐ Male  ☐ Female   ☐ Alien (if applicable)

Social Security Number ____

**DEFENDANT**

Issue: ☑ Warrant  ☐ Summons

Location Status:
Arrest Date ____ or Date Transferred to Federal Custody ____

☐ Currently in Federal Custody
☐ Currently in State Custody
   ☐ Writ Required
☐ Currently on bond
☐ Fugitive

Defense Counsel (if any): ____
☐ FPD  ☐ CJA  ☐ RET'D
☐ Appointed on Target Letter

☐ This report amends AO 257 previously submitted

**OFFENSE CHARGED - U.S.C. CITATION - STATUTORY MAXIMUM PENALTIES - ADDITIONAL INFORMATION OR COMMENTS**

Total # of Counts 5

| Set | Title & Section/Offense Level (Petty = 1 / Misdemeanor = 3 / Felony = 4) | Description of Offense Charged | Count(s) |
|---|---|---|---|
| | PLEASE SEE ATTACHED FOR | | |
| | PENALTIES | | |
| | | | |
| | | | |

## PENALTY SHEET ATTACHMENT

Counts One:

    18 U.S.C. § 371 (Conspiracy)

    Maximum penalty:    5 years imprisonment
                                 $250,000 fine (18 U.S.C. § 3571(b)(3))
                                 3 years supervised release (18 U.S.C. § 3583(b)(2))
                                 $100 special assessment (18 U.S.C. § 3013)

Counts Two through Five:

    15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, 240.10b5-1
    and 240.10b5-2, 18 U.S.C. § 2 (Securities Fraud)

    Maximum penalty:    20 years imprisonment
                                   $5,000,000 fine
                                 3 years supervised release
                                 $100 special assessment

MELINDA HAAG (CABN 132612)
United States Attorney

FILED
2011 SEP -1 P 2:29
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SEALED
BY COURT ORDER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CR 11 0625 CRB

| UNITED STATES OF AMERICA, | ) | No. |
|---|---|---|
| Plaintiff, | ) | VIOLATIONS: 18 U.S.C. § 371 - Conspiracy; 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, 240.10b5-1 and 240.10b5-2, and 18. U.S.C. §2 - Securities Fraud; and 18 U.S.C. §§ 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461 - Forfeiture. |
| v. | ) | |
| BASSAM YACOUB SALMAN a/k/a Bassam Jacob Salman, | ) | |
| Defendant. | ) | SAN FRANCISCO VENUE |

## INDICTMENT

The Grand Jury charges:

### Introductory Allegations

At all times relevant to this indictment:

1. Citigroup Global Markets Inc., a wholly owned subsidiary of Citigroup Inc. (collectively "Citigroup"), operated as an investment bank located in New York, New York. A significant portion of Citigroup's business was devoted to advising corporations on various financings and business related transactions.

//

//

INDICTMENT

2. Maher Kara was employed as an investment banker by Citigroup in the firm's Investment Banking Division in the Healthcare Group and resided in or near New York, New York.

3. Mounir Kara, also known as Michael Kara, resided in or near Walnut Creek, California.

4. Maher Kara and Michael Kara were brothers.

5. BASSAM YACOUB SALMAN, also known as Bassam Jacob Salman, resided in or near Orland Park, Illinois.

6. Maher Kara was married to BASSAM YACOUB SALMAN's sister.

7. A person known to the Grand Jury as KIB was the brother-in-law of BASSAM YACOUB SALMAN and maintained a brokerage account at Comerica Securities.

### Citigroup's Confidentiality Policy

8. Citigroup maintained written policies prohibiting the dissemination of material non-public and confidential information relating to pending transactions and financings in which Citigroup was involved. Throughout his employment at Citigroup, Maher Kara received repeated training and guidance about the proper use of material non-public and confidential information and the prohibitions against the improper use of such information including violations of the insider trading laws. For example, Maher Kara was specifically instructed by Citigroup that:

> The misuse of material non-public information is a crime. Under U.S. Federal securities laws, misuse of material non-public information can constitute insider trading.

> * * * * *

> Employees may not: ... Use confidential information or material non-public information to trade securities for their own (or related) accounts or to advise relatives, friends or others with respect to trading.

As a licensed and trained investment banking professional, Maher Kara knew and understood the rules relating to the use of material non-public and confidential information.

INDICTMENT

2

## The Citigroup Inside Information

9. Citigroup provided financial and investment banking services and advice to Citigroup clients in connection with the confidential transactions described below (the "Citigroup Inside Information"):

   a. <u>Bone Care International, Inc.</u>: In or about April 2005, Citigroup advised Bone Care International, Inc. on a sale to Genzyme Corporation. On or about May 4, 2005, there was a public announcement relating to this transaction.

   b. <u>Andrx Corporation</u>: In or about January 2006, Citigroup advised a company known to the Grand Jury on a potential acquisition involving Andrx Corporation. On or about March 13, 2006, there was a public announcement relating to Andrx Corporation.

   c. <u>United Surgical Partners International, Inc.</u>: From in or about late 2006 to early 2007, Citigroup advised Welsh, Carson, Anderson & Stowe on a buyout involving United Surgical Partners International, Inc. (also known as USPI). On or about January 8, 2007, there was a public announcement relating to this transaction.

   d. <u>Biosite Incorporated</u>: In or about March 2007, Citigroup advised Beckman Coulter, Inc. about financing relating to an acquisition involving Biosite Incorporated. On or about March 25, 2007, there was a public announcement relating to this transaction.

10. As a result of his employment at Citigroup, Maher Kara had access to material, non-public information relating to the Citigroup Inside Information. Maher Kara also had access to material, non-public information relating to other confidential transactions in which Citigroup was involved.

## The Insider Trading Scheme

11. From in or about 2004 through in or about 2007, Maher Kara, Michael Kara, BASSAM YACOUB SALMAN, and others participated in a scheme to defraud by executing securities transactions based on material, non-public information relating to the Citigroup Inside Information. Maher Kara regularly and repeatedly called or communicated with Michael Kara

//

INDICTMENT

3

and provided him with material, non-public information relating to the Citigroup Inside Information and other material, non-public and confidential information.

12. Using the Citigroup Inside Information, Michael Kara and BASSAM YACOUB SALMAN executed, or caused others to execute, multiple securities transactions in various brokerage accounts based on the Citigroup Inside Information. Maher Kara, Michael Kara, and BASSAM YACOUB SALMAN each benefitted from his participation and the participation of others in this insider trading scheme.

13. Between 2004 and 2007, BASSAM YACOUB SALMAN and others generated profits in excess of $1.1 million as a result of this insider trading scheme.

COUNT ONE: (18 U.S.C. § 371 - Conspiracy to Commit Securities Fraud)

14. Paragraphs 1 through 13 are realleged as if fully set forth here.

15. From in or about 2004 through in or about 2007, in the Northern District of California and elsewhere, the defendant,

BASSAM YACOUB SALMAN,

and others, did unlawfully, willfully, and knowingly, conspire and agree and with one another to commit an offense against the United States, to wit, securities fraud, in violation of Title 18, United States Code, Section 371, and Title 15, United States Code, Section 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1 and 240.10b5-2.

The Means and Methods of the Insider Trading Conspiracy

16. Among the means and methods by which BASSAM YACOUB SALMAN and others carried out this insider trading conspiracy were the following:

    a. Maher Kara misappropriated the Citigroup Inside Information in violation of (i) the fiduciary and other duties of trust and confidence that Maher Kara owed to Citigroup and Citigroup's clients; (ii) the expectations of confidentiality of Citigroup's clients; and (iii) Citigroup's policies and procedures relating to the use and safekeeping of confidential and material, non-public information.

//

INDICTMENT

4

b.  Maher Kara, in breach of his duty of confidentiality to Citigroup and Citigroup's clients, disclosed the Citigroup Inside Information that Maher Kara had misappropriated from Citigroup and Citigroup's clients to Michael Kara, with the understanding that Michael Kara would use the Citigroup Inside Information to purchase and sell securities, and Maher Kara thereby received and caused others to receive substantial illegal profits.

c.  Michael Kara, while in possession of the Citigroup Inside Information that he knew had been misappropriated by Maher Kara in breach of the duty owed by Maher Kara and Citigroup to keep such information confidential, purchased and sold securities based on such information and caused others to purchase and sell securities based on such information and thereby received and caused others to receive substantial illegal profits.

d.  Michael Kara disclosed some or all of the Citigroup Inside Information that Maher Kara had misappropriated from Citigroup and Citigroup's clients to BASSAM YACOUB SALMAN and others, with the understanding that BASSAM YACOUB SALMAN and others would use, or cause others to use, the Citigroup Inside Information to purchase and sell securities, and Michael Kara thereby received and caused others to receive a benefit including substantial illegal profits.

e.  BASSAM YACOUB SALMAN disclosed some or all of the Citigroup Inside Information that Maher Kara had misappropriated from Citigroup and Citigroup's clients to KIB, with the understanding that KIB would use, or cause others to use, the Citigroup Inside Information to purchase and sell securities, and BASSAM YACOUB SALMAN thereby received and caused others to receive a benefit including substantial illegal profits.

f.  BASSAM YACOUB SALMAN used or caused KIB to use the Comerica Securities brokerage account in the name of KIB to conceal the purchase and sale of securities using the Citigroup Inside Information.

### Overt Acts in furtherance of the Insider Trading Conspiracy

17.  In furtherance of the conspiracy and to effect the illegal object thereof, Maher Kara, Michael Kara, and BASSAM YACOUB SALMAN, committed and caused others

INDICTMENT

5

to commit the following overt acts, among others, in the Northern District of California and elsewhere:

    a.    On or about April 28, 2005, Michael Kara telephoned BASSAM YACOUB SALMAN.

    b.    On or about May 2, 2005, BASSAM YACOUB SALMAN caused the purchase of approximately 300 securities in Bone Care International, Inc. in Comerica Securities Account 0RJ-610917.

    c.    On or about May 3, 2005, BASSAM YACOUB SALMAN caused the purchase of approximately 300 securities in Bone Care International, Inc. in Comerica Securities Account 0RJ-610917.

    d.    On or about February 24, 2006, BASSAM YACOUB SALMAN caused the purchase of approximately 99 securities in Andrx Corporation in Comerica Securities Account 0RJ-610917.

    e.    On or about February 24, 2006, BASSAM YACOUB SALMAN caused the purchase of approximately 144 securities in Andrx Corporation in Comerica Securities Account 0RJ-610917.

    f.    On or about March 9, 2006, BASSAM YACOUB SALMAN caused the purchase of approximately 130 securities in Andrx Corporation in Comerica Securities Account 0RJ-610917.

    g.    On or about March 9, 2006, BASSAM YACOUB SALMAN caused the purchase of approximately 140 securities in Andrx Corporation in Comerica Securities Account 0RJ-610917.

    h.    On or about August 9, 2006, BASSAM YACOUB SALMAN caused the purchase of approximately 35 securities in United Surgical Partners International, Inc. in Comerica Securities Account 0RJ-610917.

//

//

INDICTMENT

                i.   On or about August 11, 2006, BASSAM YACOUB SALMAN caused the purchase of approximately 48 securities in United Surgical Partners International, Inc. in Comerica Securities Account 0RJ-610917.

                j.   On or about September 7, 2006, BASSAM YACOUB SALMAN caused the purchase of approximately 35 securities in United Surgical Partners International, Inc. in Comerica Securities Account 0RJ-610917.

                k.   On or about November 7, 2006, BASSAM YACOUB SALMAN caused the purchase of approximately 49 securities in United Surgical Partners International, Inc. in Comerica Securities Account 0RJ-610917.

                l.   On or about December 12, 2006, BASSAM YACOUB SALMAN caused the purchase of approximately 99 securities in United Surgical Partners International, Inc. in Comerica Securities Account 0RJ-610917.

                m.   On or about March 22, 2007, Michael Kara telephoned BASSAM YACOUB SALMAN.

                n.   On or about March 23, 2007, BASSAM YACOUB SALMAN caused the purchase of approximately 15 securities in Biosite Incorporated in Comerica Securities Account 0RJ-610917.

                o.   On or about March 23, 2007, BASSAM YACOUB SALMAN caused the purchase of approximately 20 securities in Biosite Incorporated in Comerica Securities Account 0RJ-610917.

        All in violation of Title 18, United States Code, Section 371.

        COUNTS TWO THROUGH FIVE: (15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §§ 240.10b-5 and 240.10b5-2; 18 U.S.C. § 2 - Securities Fraud - Aiding and Abetting)

        18.   Paragraphs 1 through 17 are realleged as if fully set forth here.

        19.   On or about the dates set forth below, in the Northern District of California and elsewhere, the defendant,

                        BASSAM YACOUB SALMAN,

        INDICTMENT

        7

1  did willfully, directly and indirectly, by use of the means and instrumentalities of interstate
2  commerce, the mails and the facilities of national securities exchanges, in connection with the
3  purchase and sale of securities, use and employ manipulative and deceptive devices and
4  contrivances, and aided and abetted others in using and employing manipulative and deceptive
5  devices and contrivances, in violation of Title 15, United States Code, Section 78j(b) and 78ff,
6  and Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1 and 240.10b5-2, and
7  Title 18, United States Code, Section 2, by (a) employing devices, schemes and artifices to
8  defraud; (b) making untrue statements of material facts and omitting to state material facts
9  necessary in order to make the statements made, in the light of the circumstances under which
10 they were made, not misleading; and (c) engaging in acts, practices and courses of business
11 which operated and would operate as a fraud and deceit upon persons, to wit, BASSAM
12 YACOUB SALMAN executed or caused others to execute the securities transactions listed
13 below based on material, non-public information and confidential information Michael Kara and
14 BASSAM YACOUB SALMAN obtained from Maher Kara:

| COUNT | TRADE DATE | SECURITY | ACCOUNT | TRADE |
|---|---|---|---|---|
| TWO | November 7, 2006 | United Surgical Partners International, Inc. | Comerica Securities 0RJ-610917 | purchased 58 securities |
| THREE | December 15, 2006 | United Surgical Partners International, Inc. | Comerica Securities 0RJ-610917 | purchased 6,200 securities |
| FOUR | March 23, 2007 | Biosite Incorporated | Comerica Securities 0RJ-610917 | purchased 37 securities |
| FIVE | March 23, 2007 | Biosite Incorporated | Comerica Securities 0RJ-610917 | purchased 22 securities |

25    All in violation of Title 15, United States Code, Section 78j(b) and 78ff; Title 17, Code of
26 Federal Regulations, Sections 240.10b-5, 240.10b5-1 and 240.10b5-2; and Title 18, United
27 States Code, Sections 2 and 371.
28
   INDICTMENT

FORFEITURE ALLEGATION: (18 U.S.C. § 981(a)(1)(C); 21 U.S.C. § 853(p); and 28 U.S.C. § 2461)

20. Paragraphs 1 through 19 are realleged as if fully set forth here and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461.

21. Upon a conviction of any of the offenses alleged in Counts One through Five, the defendant,

BASSAM YACOUB SALMAN,

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all right, title and interest in property, real and personal, involved in said violations as alleged in Counts One through Five of this Indictment, including but not limited to the following property: a sum of not less than $1.1 million, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Five.

22. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

any and all interest defendant has in any other property, up to the value of the property described in paragraph 23 above, shall be forfeited to the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All in violation of Title 15, United States Code, Section 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1 and 240.10b5-2; Title 18, United States

INDICTMENT

9

Code, Sections 2, 371 and 981(a)(1)(C); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461.

DATED: September 1, 2011

A TRUE BILL

*[signature]*

FOREPERSON

MELINDA HAAG
United States Attorney

*[signature]*

MIRANDA KANE
Chief, Criminal Division

Approved as to form:

*[signature]*

ADAM A. REEVES
Assistant United States Attorney

INDICTMENT