GAIL SHIFMAN, ESQ.
Cal State Bar No. 147334
LAW OFFICES OF GAIL SHIFMAN
601 California Street, Suite 1800
San Francisco, CA  94108
Telephone:     (415) 551-1500
Facsimile:     (415) 551-1502
Email:          gail@shifmangroup.com

SHAFFY MOEEL, ESQ.
Cal State Bar No. 238732
MOEEL LAW OFFICE
214 Duboce Ave.
San Francisco, CA 94103
Telephone:     (415) 735-5021
Facsimile:     (415) 255-8631
Email:          shaffymoeel@gmail.com

Attorney for Defendant
BASSAM YACOUB SALMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

-0o0-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>       v.<br><br>BASSAM YACOUB SALMAN,<br><br>                Defendant. | CASE NO. CR 11-0625 EMC<br><br>**DEFENDANT'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS AND REQUEST FOR AN ADDITIONAL INSTRUCTION** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Bassam Yacoub Salman, by and through undersigned counsel, hereby submits his objections to the Court's proposed jury instructions and request for an additional instruction.  By filing these objections, Mr. Salman does not waive any of his previously filed objections to the jury instructions already ruled upon by the Court.

Dated:  September 6, 2013                Respectfully submitted,

                                         LAW OFFICES OF GAIL SHIFMAN

                                         /s/ Gail Shifman

                                         _____
                                         GAIL SHIFMAN
                                         Attorney for Defendant
                                         BASSAM YACOUB SALMAN

                                         MOEEL LAW OFFICE

                                         /s/ Shaffy Moeel

                                         _____
                                         SHAFFY MOEEL
                                         Attorney for Defendant
                                         BASSAM  YACOUB SALMAN

DEFENDANT'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS AND REQUEST FOR AN ADDITIONAL INSTRUCTION

# I.

## MR. SALMAN'S OBJECTIONS TO THE COURT'S PROPOSED INSTRUCTIONS

### A.  Court's Proposed Instruction 28: Impeachment Evidence—Witness

Mr. Salman requests this instruction in anticipation of confronting various witnesses with inconsistencies in his/her statements over the course of the investigation in the instant case.  In order to assert his 5th and 6th Amendment rights to present a defense, he requests that the Court await trial and reserve its ruling on the giving of this instruction to determine whether there is any evidence to support it.

### B.  Court's Proposed Instruction 35: Device or Scheme to Defraud Defined

Mr. Salman requests that the Court add the following language in bold to paragraph 5 to be consistent with and conform to the Court's ruling on element (6) of this instruction at page 2:

> The law also prohibits a person who is not actually an insider from trading in securities based on material, nonpublic information, if the person knows that the material, nonpublic information was intended to be kept confidential, knows that the information was disclosed in breach of a duty of trust or confidence **and knows that the insider personally benefitted in some way, directly or indirectly, from the disclosure of the allegedly inside information**.

Mr. Salman requests that the Court add the following language in bold to the second sentence of paragraph 6 to be consistent with and conform to the Court's ruling on element (6) of this instruction at page 2:

> …. A person who receives material, nonpublic information engages in an act of fraud or deceit under the federal securities laws if he buys or sells securities based on material, nonpublic information that he knows was disclosed by another person in breach of a duty of trust and confidence **and knows that the insider personally benefitted in some way, directly or indirectly, from the disclosure of the allegedly inside information**.

### C.   Court's Proposed Instruction 37: Deliberate Ignorance

Although Mr. Salman agrees that the Court's determination of the propriety of a deliberate ignorance instruction may only be made after the close of evidence, he provides this

supplemental case authority in further support of his position that the giving of such an instruction is not appropriate in this case.

The Ninth Circuit has repeatedly held that the giving of a deliberate avoidance instruction is "rarely appropriate," and "[b]ecause of the risk that a jury might convict a defendant on mere negligence—'that defendant should have known his conduct was illegal'—we have recognized that the instruction should be used sparingly." *United States v. Baron*, 94 F.3d 1312 (9th Cir. 1996) (overruled in part *United States v. Heredia*, 483 F.2d 913 (9th Cir. 2007)) ; *United States v. Sanchez-Robles*, 927 F.2d 1070, 1073 (9th Cir. 1991), quoting *United States v. Garzon*, 688 F.2d 607, 609 (9th Cir. 1982) (emphasis in original).

Cases upholding a deliberate avoidance instruction involved facts and circumstances creating a high probability of criminal activity that the defendant then ignored.  In *Jewell*, the defendant entered the United States in a car containing 100 pounds of marijuana in a secret compartment.  He claimed that he was driving the car because a stranger on the streets of Tijuana had offered him $100 to drive the car across the border after the defendant declined to buy marijuana from him.  *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976).  The defendant then saw a secret compartment in the trunk of the car but he declined to investigate further.  Under those circumstances, the Ninth Circuit held that there was both circumstantial evidence of actual knowledge of the marijuana and evidence that "he deliberately avoided positive knowledge of the contraband to avoid responsibility in the event of discovery."  *Id.* at 699.[1]

---

[1] In *United States v. Heredia*, the Ninth Circuit revisited its holding in *Jewell*, and held that there were two prongs to determine whether a deliberate avoidance instruction is properly given when: (1) the defendant was aware of a high probability of criminality and (2) deliberately avoided learning the truth.  *Heredia*, 483 F.3d at 924.  The appellate court clarified that it did not intend for a defendant's

*(Footnote continued)*

In *United States v. Nicholson*, 677 F.2d 706 (9th Cir. 1982), the defendant invested $20,000 cash in an unspecified deal with someone he knew to be a drug smuggler after he was promised a high return on his investment but given no documentation of the deal. *Id.* at 707-08. The defendant was later delivered $10,000 on an hour's notice in a brown paper bag. *Id.* The Court upheld a deliberate ignorance instruction. *See also United States v. Perez-Padilla*, 846 F.2d 1182, (9th Cir. 1988) (per curiam) (man placed baggie in defendant's jacket and gave him $300 to transport it to Tijuana); *United States v. McAllister*, 747 F.2d 1273 (9th Cir. 1984) (stranger known only by first name offered defendant $25 to drive truck from San Diego to Los Angeles, delivered truck at 2 a.m. and instructed defendant to drive through close truck scales area on highway to avoid border control checkpoint), cert denied, 474 U.S. 829, 106 S. Ct. 92, 88 L. Ed. 2d 76 (1985); *United States v. Suttiswad*, 696 F.2d 645 (9th Cir. 1982) (stranger who had given only first name gave Thai defendant clothes, money, heavy suitcase and airplane ticket in return for bringing suitcase into U.S.).

A deliberate ignorance instruction is not appropriate where the only evidence alerting a defendant to the high probability of criminal activity is direct evidence of the illegality itself. *Sanchez-Robles* at 1074. ("'**[A]** *Jewell* **instruction should not be given when the evidence is that the defendant had either actual knowledge or no knowledge at all of the facts in question**." (Emphasis added.) *Id.* quoting *United States v. Perez-Padilla*, 846 F.2d 1182 (9th Cir. 1988)). "In our cases disallowing a *Jewell* instruction, there were no suspicious circumstances surrounding the activity beyond direct evidence of the illegality itself, which goes only to actual knowledge." *Sanchez-Robles* at 1073. In *Sanchez-Robles*, the Court found reversible error in the

---

motive for failing to learn the truth be a separate consideration (or prong) in determining whether the instruction be given. *Id.* at 920.

district court's giving of deliberate ignorance instruction when the evidence in that case pointed either directly or circumstantially only to actual knowledge of illegality. *Id*. at 1075. The defendant failed to inspect the van that she was driving despite a powerful smell emanating from it. *Id*. The Court held that if the defendant recognized the smell as that of marijuana, then she knew that there was marijuana in the car. *Id*. If the defendant did not recognize the smell of marijuana, then she had no reason to be suspicious. *Id*. "Without suspicion of a high probability of criminal activity, the deliberate ignorance theory fails." *Id.*

In Mr. Salman's case, Mounir Kara is anticipated to testify, as he did in the trial of *United States v. Karim Bayyouk,* that he told Mr. Salman that he obtained confidential inside information about stocks from Maher Kara, known to Mr. Salman to be an investment banker, and then conveyed that information to Mr. Salman. Testimony of this kind is direct evidence of Mr. Salman's actual knowledge of the material, nonpublic nature of the alleged information he allegedly received from Mounir Kara. Either Mr. Salman knew, as Mounir Kara will say, that the information he received and allegedly caused another to trade on was material, nonpublic and obtained in breach of an insider's duty or he didn't. There will be no evidence that Mr. Salman *did* anything to deliberately avoid learning of any illegality. This is in contrast to the defendants in *United States v. Goffer* where the Second Circuit found that a deliberate ignorance instruction in an insider trading case was warranted. *United States v. Goffer*, 20113 WL 3285115 (July 1, 2013).

> While [Goffer] and Kimelman were recruiting Slaine for Incremental, Goffer told Slaine that he was 'better off not knowing where 'his tips' were coming from.' Gov't Ex. 222. That way, Goffer continued, if 'someone from the government ever ask[ed] you where did [that tip] come from. You [would] be like, I don't freakin' know where it came from.' Building on Goffer's (facetious) assertion that his source was a construction worker, Kimelman added that it was a '[g]uy fixing that pothole down there.' His additions to this conversation about the need

for plausible deniability underscore Kimelman's conscious avoidance of knowledge as to Goffer's source.

*Goffer* at *29.

There will not be any evidence in Mr. Salman's case to show that he made such statements to avoid learning the truth of the source of the information or the material, nonpublic nature of the information.   This is particularly so because there will not be any evidence that Mr. Salman took *any deliberate* actions to avoid learning the truth.  "A deliberate action is one that is '[i]ntentional; premeditated; fully considered.'" *Heredia*, 483 F.3d at 920, quoting Black's Law Dictionary 459 (8th ed. 2004).

Mr. Salman respectfully requests that at the close of the evidence, this instruction be refused.

D.  **Court's Proposed Instruction 39: Benefit Defined**

Mr. Salman requests that the Court's Proposed Instruction 39 defining benefit be modified by removing the "or maintaining or furthering a friendship" language at the end of the paragraph such that the entire instruction reads as follows:

> Personal benefit includes not only monetary gain, such as a cut of the take or a gratuity from the tippee, but also a reputational benefit or the benefit one would obtain from simply making a gift of confidential information to a trading relative or friend.  The benefit does not need to be financial or tangible in nature; it could include, for example, maintaining a useful networking contact, improving the tipper's reputation, or obtaining future financial benefits.

The instruction above is a more accurate statement of the law.  The "maintain or furthering a friendship" language is not included in *S.E.C. v. Obus*, 693 F.3d 276 (2d Cir. 2012), was not given in *United States v. Newman*, No. 12-CR-121-RJS (S.D.N.Y. Dec. 12, 2012), and does not appear in *Dirks v. S.E.C.*, 463 U.S. 646, 663-64 (1983).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.

### MR. SALMAN REQUESTS A MISSING WITNESS INSTRUCTION

**A.  Introduction**

Over the defense's objection, the Court has granted the government's motion in limine to admit Karim Bayyouk's statements to the SEC.  As Mr. Salman argued in his moving papers, this evidence violates Mr. Salman's 5th and 6th Amendment rights under the Constitution.  Without an opportunity to cross-examine Mr. Bayyouk and ask him to explain his statements to the SEC, Mr. Salman cannot effectively present a defense.   Mr. Salman understands that the Court has overruled his objection.  For that reason, Mr. Salman requests that the Court grant his request for a missing witness instruction that would read as follows:

> You will remember that the government presented evidence in the form of a recorded statement to the Securities and Exchange Commission of an individual named Karim Bayyouk.  The government contends that Mr. Bayyouk's statements were false. The government has asked you to draw some inferences from the alleged false statements of Mr. Bayyouk.  You may wonder why Mr. Bayyouk was not called as a witness to answer questions in this trial.  If you believe that the testimony of Karim Bayyouk would have been important, and if you also believe that the government could have brought him to court to testify in this trial, then you may consider its failure to do so when you decide whether the government has proved, beyond a reasonable doubt, that the defendant committed the crime.  In other words, you may conclude that the government did not call Mr. Bayyouk as a witness because his testimony would have hurt the government case.

**Authority**:  Federal Judicial Center, Pattern Crim. Jury Instr. 39 (1988).

**B.  As It Was Peculiarly Within the Government's Power to Make Mr. Bayyouk Available But It Failed To Do So, A Missing Witness Instruction Is Warranted.**

A missing-witness jury instruction informs the jury that, when one party has the particular power to call a relevant witness but does not, the jury can infer that the witness' testimony would have been unfavorable to that party.  *See United States v. Tisor*, 96 F.3d 370, 377 (9th Cir. 1996).

The basic idea is that:

> If it is peculiarly within the power of either the government or the defense to produce a witness who could give relevant testimony on an issue in the case, failure to call that witness may give rise to an inference that this testimony would have been unfavorable to that party. No such conclusion should be drawn by [the jury], however, with regard to a witness who is equally available to both parties or where the testimony of that witness would be merely cumulative.

*Id.* n.3 (quoting Devitt and Blackmar, *Federal Jury Practice and Instructions* § 14.15 (4th ed. 1992)).

The instruction is appropriate when: (1) the witness is peculiarly within the power of the party against whom the instruction is sought and (2) the inference of unfavorable testimony from the absent witness is a natural and reasonable one. *See United States v. Bramble*, 680 F.2d 590, 592 (9th Cir. 1982). Here, a missing-witness instruction is appropriate. Given that the government chose to charge Mr. Karim Bayyouk two days before the statute of limitations to his charged crime ran, thereby making him unavailable for Mr. Salman's trial, Mr. Bayyouk was peculiarly within the government's power.

Mr. Bayyouk's indictment charged him with committing one count of obstruction of justice on May 31, 2007. The statute of limitations to Mr. Bayyouk's charged offense would have run as of May 31, 2012. Two days before that date, Mr. Bayyouk was indicted on May 29, 2012. Mr. Salman was indicted about eight months earlier, on September 1, 2011. For those eight months before Mr. Bayyouk was indicted, and for years before either indictments were filed, the government was investigating this alleged conspiracy and determining its theory of prosecution and trial strategy. In the months leading up to Mr. Bayyouk's indictment, Mr. Salman had made clear to the government his intent on proceeding to trial by the setting of trial dates. Thus, it was also clear to the government that Mr. Salman may have needed to call Mr. Bayyouk as a defense witness in his trial. But then, with only two days left to indict Mr.

Bayyouk, the government chose to do so, making him unavailable to Mr. Salman and his defense.

The government has advocated vigorously that the Court admit Mr. Bayyouk's SEC statements in

Mr. Salman's trial and has argued that these statements are central to the government's case

against Mr. Salman in that they show a consciousness of guilt on the part of Mr. Bayyouk that

may be imputed onto Mr. Salman.  The government's strategy here is troubling.  Rather than

offer Mr. Bayyouk immunity to testify at Mr. Salman's trial for the government about his alleged

false statements and subject him to cross-examination by the defense, the government made him

totally unavailable to the defense (by charging him with a crime months after Mr. Salman but

relatively close in time to Mr. Salman's trial date and years after Mr. Bayyouk's own alleged

false statements to the SEC) while at the same time conceding that his contribution to the

government's case (by way of his recorded SEC interview) is tantamount.  This action by the

government is unfair and should be ameliorated by a missing witness instruction.

   In addition, although the government believes that Mr. Bayyouk's recorded statement is

helpful to its case, the inference that Mr. Bayyouk's live testimony at Mr. Salman's trial would

be unfavorable for the government is a natural and reasonable one.  There is no doubt that the

single best witness that could explain and refute what the government is asking the jury to

conclude—that Mr. Bayyouk's allegedly false statement to the SEC ought to impute

consciousness of guilt onto Mr. Salman--is Mr. Bayyouk himself.  Mr. Bayyouk is the only

person who can explain his statements during the SEC interview.

   If Mr. Bayyouk's testimony would support the government's case, it would be devastating

to the defense.  Thus, the natural and reasonable inference from the government's failure to call

him is that his testimony would not be helpful to the government.  As this Court has explained,

"[t]he failure of a party to produce a material witness who could elucidate matters under

investigation gives rise to a presumption that the testimony of that witness would be unfavorable to that party if the witness is peculiarly within the party's control." *United States v. Noah*, 475 F.2d 688, 691 (9th Cir. 1973).

Mr. Salman respectfully requests a missing witness instruction as included above.

Dated:  September 6, 2013                Respectfully submitted,


LAW OFFICES OF GAIL SHIFMAN

/s/ *Gail Shifman*
_____
GAIL SHIFMAN


MOEEL LAW OFFICE

/s/ *Shaffy Moeel*

_____
SHAFFY MOEEL

Attorneys for Defendant
BASSAM  YACOUB SALMAN