UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BASSAM YACOUB SALMAN, a/k/a Bassam Jacob Salman<br><br>Defendant. | Case No. CR-11-0625 EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL**<br><br>**(Docket No. 262)** |

## I. INTRODUCTION

Pending before the Court is Defendant's motion for a new trial. Dkt. No. 262. In September 2013, Defendant stood trial on one count of conspiracy and four counts of securities fraud. On September 30, 2013, the jury returned a verdict of guilty on all counts. Dkt. No. 253. Defendant now brings a motion for new trial under Fed. R. Crim. P. 33 asserting that the government failed to introduce evidence at trial as to two essential elements of the securities fraud claims. Defendant also argues that two jury instructions contained legal errors which lowered the government's burden of proof. For the following reasons, Defendant's motion for a new trial is **DENIED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The indictment in this case was filed on September 1, 2011. Dkt. No. 1. It alleged the following facts.

Maher Kara is a former investment banker who was employed by Citigroup in the firm's Investment Banking Division in the Healthcare Group. *Id.* ¶ 2. Defendant is Maher Kara's brother

1

in law. *Id.* ¶ 5. From 2004 through 2007, Maher Kara provided his brother, Mounir "Michael" Kara with material, non-public information relating to a number of companies Citigroup was advising in the context of potential acquisitions. *Id.* ¶ 9-11. Michael Kara would, in turn, provide Defendant with this material, non-public information. *Id.* ¶ 16(d). Defendant would then disclose this material, non-public information to his brother in law, Karim Bayyouk, with the understanding Bayyouk would use the information to buy and sell securities in part on Salman's account and for his benefit as well. *Id.* ¶ 16(e). Defendant did this in order to conceal the purchase and sale of securities based on the material, non-public information. *Id.* ¶ 16(f).

The indictment charged Defendant with four counts of securities fraud regarding to four purchases of securities. First, on November 7, 2006, Defendant purchased 58 securities in United Surgical Partners International, Inc. ("USPI"). *Id.* ¶ 19. Second, on December 15, 2006, Defendant purchased 6,200 more securities in USPI. *Id.* On January 8, 2007, Citigroup client Welsh, Carson, Anderson & Stowe publically announced a buyout involving USPI. *Id.* ¶ 9(c). Third, on March 23, 2007, Defendant purchased 59 securities in Biosite Incorporated. *Id.* ¶ 19. On March 25, 2007, a public announcement was released announcing that Citigroup client Beckman Coulter, Inc. would be acquiring Biosite Incorporated. *Id.* ¶ 9(d). The indictment also charged Defendant with conspiracy to commit securities fraud based on these (as well as other) transactions.

Additional facts, and a discussion of the evidence produced at trial, are included below as necessary to address the arguments raised by Defendant.

### III.   DISCUSSION

A.   Legal Standard

Under Federal Rule of Criminal Procedure 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "'A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal . . . .'" *United States v. Inzunza*, 638 F.3d 1006, 1026 (9th Cir. 2009) (quoting *United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992)). Accordingly, a district court "'need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so

doing evaluate for itself the credibility of the witnesses.'" *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000) (quoting *Alston*, 974 F.2d at 1211).

A new trial may be granted to correct erroneous jury instructions. *See, e.g.*, *United States v. Mann*, Cr. No. 11-1528, 2013 WL 6037681 (D.N.M. Nov. 7, 2013) ("A motion under Rule 33 may be 'grounded on any reason other than newly discovered evidence,' including improper jury instructions."); *United States v. Carter*, 966 F. Supp. 336, 340 (E.D.Pa. 1997) ("A Rule 33 motion for a new trial is the more appropriate method for addressing the allegedly erroneous evidentiary rulings and improper jury instructions."). In determining whether instructions are misleading or inadequate to guide the jury's deliberation, the Court evaluates the instructions as a whole. *See United States v. Chang Da Liu*, 538 F.3d 1078, 1088 (9th Cir. 2008); *see also United States v. Turner*, 189 F.3d 712 (8th Cir. 1999) ("In so doing, we do not consider portions of a jury instruction in isolation, but rather consider the instructions as a whole to determine if they fairly and adequately reflect the law applicable to the case.").

A defendant may also move for a new trial based on the weight of the evidence. Even where there exists sufficient evidence to support the verdict, a district court may nonetheless grant a motion for new trial if it "'concludes that . . . the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred.'" *Kellington*, 217 F.3d at 1087 (quoting *Alston*, 974 F.2d at 1211); *see also United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985) (recognizing that the district court may not "set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." (citation omitted)). This is a stringent standard, and the Ninth Circuit has held that such motions are generally disfavored and should only be granted in "exceptional" cases. *See United States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012); *see also United States v. Camacho*, 555 F.3d 695, 705 (8th Cir. 2009) ("New trial motions based on the weight of the evidence are generally disfavored . . . .").

3

B.  The Deliberate Ignorance Jury Instruction Was Proper

Defendant argues that it was error for the Court to give the following deliberate ignorance instruction:

**JURY INSTRUCTION NO. 38**
**COUNTS TWO THROUGH FIVE - DELIBERATE IGNORANCE**

You may find that the defendant acted knowingly if you find beyond a reasonable doubt that the defendant:

1. was aware of a high probability that he obtained information that had been disclosed in violation of a duty of trust and confidence, and

2. deliberately avoided learning the truth.

You may not find such knowledge, however, if you find that the defendant actually believed that the information he obtained was not disclosed in violation of a duty of trust and confidence, or if you find that the defendant was simply careless or reckless.

Dkt. No. 245, at 43. This instruction, modeled after Ninth Circuit Model Jury Instruction 5.7, is an accurate statement of the law. *See United States v. Heredia*, 483 F.3d 913, 924 (9th Cir. 2007). In fact, this instruction (like the deliberate ignorance instruction given in *Heredia*), goes beyond the Model Instruction by making it explicit that the jury may not find the requisite knowledge if it found that the Defendant was merely reckless. *Id.*

Defendant argues, however, that the instruction was improper in the circumstances of this case. Defendant begins with the correct assertion that a conviction under Section 10(b) requires a showing that the defendant acted "willfully," that is, with a "'realization . . . that he was doing a wrongful act' under the securities law." *United States v. Cassese*, 428 F.3d 92, 98 (2d Cir. 2005). The Defendant then argues that the Court deviated from this *mens rea* requirement because the deliberate ignorance instruction "lowered the standard of the burden of proof on an essential element from beyond a reasonable doubt" – specifically, the requirements that Defendant know the inside information was disclosed in violation of a duty of trust for a personal benefit. Dkt. No. 262, at 7.

The Court disagrees. First, this Court rejects Defendant's implication that the deliberate ignorance instruction "effectively substitut[ed] a negligence standard for the requirement that the

4

defendant acted with guilty knowledge." *Id.* The instruction given by the Court expressly stated that the jury could not find that Defendant acted with the requisite knowledge if it found that Defendant was "simply careless or reckless." Dkt. No. 245, at 43. Therefore, the jury could not have concluded that Defendant was simply negligent about the unlawful nature of the trading information and still convicted him. *See United States v. Heredia*, 483 F.3d 913, 923-24 (9th Cir. 2007) ("Nor do we agree that the *Jewell* instruction risks lessening the state of mind that a jury must find to something akin to recklessness or negligence. . . . Recklessness or negligence never comes into play, and there is little reason to suspect that juries will import these concepts, as to which they are not instructed, into their deliberations."). Further, Defendant's more general argument, which appears to imply that the deliberate ignorance is inconsistent with a *mens rea* requirement of "willfully" or "knowingly" cannot be reconciled with the Ninth Circuit's recognition that the "substantive justification for the rule is that deliberate ignorance and positive knowledge are equally culpable." *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976) (en banc).

Second, the Court notes that federal courts have routinely applied deliberate ignorance or conscious avoidance principles in securities cases which similarly required a showing that defendant acted "willfully" or with scienter. *See, e.g.*, *United States v. Whitman*, 904 F. Supp. 2d 363, 372 (S.D.N.Y. 2012) ("[W]here appropriate (as here), the Government is entitled to 'willful blindness' or 'conscious avoidance' instruction to the jury on the issue of such knowledge [regarding whether the tipper were receiving actual or anticipated benefits]."); *United States v. Berger*, 188 F. Supp. 2d 307, 329 (S.D.N.Y. 2002) (relying on deliberate ignorance principles to conclude that there was a sufficient factual basis for defendant's guilty plea in a Section 10(b) case); *see also S.E.C. v. Musella*, 678 F. Supp. 1060, 1063 (S.D.N.Y. 1988) ("I cannot accept that conscious avoidance of knowledge defeats scienter in a stock fraud case, any more than it does in the typical *mens rea* criminal context.").

There was an evidentiary basis for applying the deliberate indifference instruction in this case. The case of *United States v. Svoboda*, 347 F.3d 471 (2d Cir. 2003) is directly on point. In that case, Defendants Robles and Svoboda were long-time friends. *Id.* at 475. Mr. Svoboda was employed as a "credit policy officer" at a financial institution engaged in commercial lending. *Id.*

1  At trial Mr. Svoboda testified against Mr. Robles and stated that he obtained confidential
2  information about certain securities and tender offers and passed the information to Robles, who
3  then used the insider information to execute trades. *Id.* Mr. Robles testified in his own defense and
4  argued that he had no knowledge of the unlawful source of Svoboda's information. *Id.* The district
5  court gave a conscious avoidance instruction. *Id.* at 475-76.

The Second Circuit affirmed the propriety of the conscious avoidance instruction. First, consistent with the instruction given in this case, the Court recognized that a conscious avoidance instruction is appropriate where there is evidence that the defendant "(1) was aware of a high probability of the disputed fact and (2) deliberately avoided confirming that fact." *Id.* at 480. The Court then found that there was a sufficient factual predicate for the instruction. The Court found the following factors relevant:

- "First, the source of Svoboda's information was suspicious – Robles knew that Svoboda was a credit officer at Nations Bank and would thus be privy to confidential financial information." *Id.*
- "Second, the timing of Robles' trades was suspicious – for example, some of Robles' trades occurred as little as a day before a tender offer announcement." *Id.*
- "Third, the success of the trades was suspicious – Robles realized huge returns, up to 400%, on trades based on Svoboda's advice." *Id.*

The Court found that these three factors combined to "suggest a high probability that Svoboda's tips were based on inside information and that any lack of actual knowledge on Robles' part was due to a conscious effort to avoid confirming an otherwise obvious fact." *Id.* at 481. In addressing the defendant's knowledge of the conspiracy, the court noted: "The conscious avoidance doctrine provides that a defendant's knowledge of a fact required to prove the defendant's guilt may be found when the jury is persuaded that the defendant consciously avoided learning that fact while aware of a high probability of its existence." *Id.* at 477.

As in *Svoboda*, the government introduced sufficient evidence laying the foundation for a deliberate ignorance instruction. The government introduced evidence showing that Defendant knew that Maher Kara – the brother of Michael Kara from whom Defendant received his trading tips

– was an investment banker at Citigroup. Further, the government showed that the trades which formed the basis of the indictment were made shortly before major corporate announcements. Moreover, the government introduced evidence of the large profits Defendant and Karim Bayyouk realized as a result of their trading. Finally (and unlike *Svoboda*), the government introduced evidence showing that Defendant utilized accounts belonging to his brother-in-law, Karim Bayyouk, to execute the trades, rather than using his own accounts; this strongly suggests consciousness of wrongdoing[1]

At the hearing on December 11, 2013, Defendant argued that the evidence at trial was insufficient to support the deliberate ignorance instruction because the government failed to introduce evidence that Defendant took "deliberate actions" to avoid learning the truth about the nature of the "tips." He points to the Supreme Court's statement in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011), where the Court stated that willful blindness/deliberate ignorance requires that an individual take "deliberate actions" to avoid learning the requisite facts. Defendant argues that the government, at most, showed that Defendant *failed* to act, and that omissions of this kind cannot constitute "deliberate action" as required by *Global-Tech*.

The Court disagrees. First, as the Second Circuit has expressly recognized, *Global-Tech* did not alter the deliberate ignorance standard. Rather, "*Global-Tech* simply describes existing case law" and "did not alter the conscious avoidance standard." *Id.* at 128. Second, and more significantly, since *Global-Tech*, the Ninth Circuit has affirmed the use of a deliberate ignorance instruction where the defendant merely failed to confirm a fact. In *United States v. Yi*, 704 F.3d 809 (9th Cir. 2013), a defendant who had been convicted of conspiracy to violate the Clean Air Act appealed, arguing in part that the district court erred in giving a deliberate ignorance instruction regarding his knowledge of the presence in the ceiling of his condominium complex. *Id.* at 804.

---

[1] The one difference between the *Svoboda* case and the instant case is that here, Defendant was a "remote tippee" in that the evidence at trial suggests the insider information went from Maher Kara (the tipper), through his brother Michael Kara, and then to Defendant. In the circumstances of this case, however, given the familial relationship between the parties, the Court finds this distinction immaterial as it does not negate the probative value of the evidence regarding whether there was a "strong possibility" that defendant knew the trading information was unlawful and deliberately avoided confirming the fact.

The Ninth Circuit affirmed the use of a deliberate ignorance instruction and, expressly addressing *Global-Tech*, stated:

> Turning to the second *Global-Tech* prong, if the jury could infer that Yi was aware of a high probability that the ceilings contained asbestos, it also could infer that Yi engaged in a deliberate pattern of failing to read documents that might clarify whether asbestos was in fact present. . . . The evidence regarding Yi's real estate experience and pattern of failing to read documents common to real estate transactions supports a finding that Yi deliberately avoided learning the truth about whether the Forest Glen ceilings contained asbestos.

*Id.*

Similarly, in *United States v. Ramos-Atondo*, 732 F.3d 1113 (9th Cir. 2013), a case relied on by the government at the hearing,[2] the Ninth Circuit expressly held that a "failure to investigate can be a deliberate action." *Id.* at 1120. As a result, the Court found the district court properly instructed the jury on deliberate ignorance in a case involving a conspiracy to import marijuana drugs because:

> The jury could have inferred that Corona-Vidal, Martinez, and Ramos deliberately chose not to ask why they were going to unload packages at the beach in dark, wearing dark clothing, without any identification or possessions. The jury could have inferred that Ramos-Atondo chose not to examine the packages on the boat, or ask why he was taking a boat full of packages from Mexico to a beach in the United States in the dark using a pre-programmed GPS.

*Id.* It is thus apparent that the Ninth Circuit has held that the failure to ask questions or otherwise confirm a fact – such as Defendant's failure to follow up on the source of the tips in this case in light of the circumstances in this case – can constitute "deliberate action" for purposes of a deliberate ignorance instruction.

Defendant is not entitled to a new trial on the basis of the deliberate ignorance instruction. The government provided a sufficient factual basis for the instruction and the instruction as given accurately stated the law.

---

[2] This case was raised by the government for the first time at the hearing. The Court provided Defendant an opportunity to address this case in a supplemental brief, ordering Defendant to file any such brief by Friday, December 13, 2013. Dkt. No. 267. Defendant opted to not file a brief.

8

C. <u>The Court Correctly Instructed the Jury on the Personal Benefit Element</u>

The Defendant argues that the Court erred in failing to instruct the jurors that they could only convict Defendant if he "knew inside information was disclosed in exchange for a personal benefit." Dkt. No. 262, at 12. Specifically, Defendant takes issue with the following instruction:

**JURY INSTRUCTION NO. 37**
**KNOWLEDGE OF BREACH BY TIPPER**

> As to the defendant's knowledge that the insider has breached the insider's duty of trust and confidentiality in return for some actual or anticipated benefit, it is not necessary that the defendant know the specific confidentiality rules of a given company or the specific benefit given or anticipated by the insider in return for disclosure of inside information; rather, it is sufficient that the defendant had a general understanding that the insider was improperly disclosing inside information for personal benefit.

Dkt. No. 245, at 42. This instruction is identical to that given by the Southern District of New York in the case *United States v. Whitman*, 904 F. Supp. 2d 363, 371 (S.D.N.Y. 2012).

This instruction is a correct statement of the law and is not confusing when read in its entirety and with the other instructions as a whole. First, the Court, contrary to Defendant's assertion, did unequivocally instruct the government had to prove, beyond a reasonable doubt, that Defendant knew that Maher Kara personally benefitted in some way. Specifically, the Court instructed:

> In order to find that the government has established the first element of securities fraud . . . the government must prove each of the following beyond a reasonable doubt as to each Count:
>
> . . . .
>
> (6) That the defendant knew that Maher Kara personally benefitted in some way, directly or indirectly, from the disclosure of the allegedly inside information to Mounier ("Michael") Kara.

Dkt. 245, at 41. Second, Instruction 37 was not in conflict with this requirement and did not lower the government's burden of proof. Instruction 37 does not negate the requirement that the government prove that Maher Kara did, in fact, receive a personal benefit. Instead, Instruction 37 goes only to what Defendant knew in this regard; it stated that the government had to prove that Defendant "generally" understood that the insider improperly disclosed information for a personal

9

benefit, but did *not* have to prove (1) that the defendant was aware of any *specific* company rule prohibiting disclosure, or (2) that the defendant was aware of the *specific* benefit given or anticipated. Defendant does not argue that the government must prove beyond a reasonable doubt that the tippee be aware of the precise benefit the tipper received by disclosing confidential insider information and the Court has found none. *Cf. S.E.C. v. Warde*, 151 F.3d 42, 48 (2d Cir. 1998) ("[T]he Supreme Court has made plain that to prove a § 10(b) violation, the SEC need not show that the tipper expected or received a specific or tangible benefit in exchange for the tip." (citing *Dirks v. S.E.C.*, 463 U.S. 646, 664 (1983)).[3]

In light of the clear, unequivocal instruction that the government had to prove, beyond a reasonable doubt, that Defendant knew that Maher Kara personally benefitted from his disclosure, the Court finds there was no instructional error.

D. <u>Sufficient Evidence Was Presented at Trial Regarding Defendant's Knowledge of Maher Kara's Breach of Fiduciary Duties and Benefit</u>

Defendant argues that a new trial is necessary because there was no evidence adduced at trial that Defendant knew that Maher Kara breached his fiduciary duties or that Maher Kara obtained a personal benefit. Dkt. No. 262, at 4. The Court disagrees. As the Ninth Circuit has recognized, "'direct proof' of one's specific wrongful intent is 'rarely available.' But willfulness may be inferred from circumstantial evidence." *United States v. Dearing*, 504 F.3d 897, 901 (9th Cir. 2007); *see also United States v. Nungaray*, 697 F.3d 1114, 1117 (9th Cir. 2012) ("The government may demonstrate knowledge and intent through circumstantial evidence."). The Court finds that the government adduced sufficient circumstantial evidence at trial to show Defendant's knowledge regarding Maher Kara's personal benefit and breach of fiduciary duties.

Regarding Defendant's knowledge of Maher Kara's breach of his fiduciary duties, the government presented substantial circumstantial evidence, including the following:

---

[3] Nor does the Court find any error with the use of the term "understanding" as opposed to "knowledge." *See* Black's Law Dictionary (8th ed. 2004) (defining the verb "understand" as "To apprehend the meaning of; to know"); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005) ("'[K]nowledge' and 'knowingly' are normally associated with awareness, understanding, or consciousness.").

- Defendant was aware that Maher Kara was an investment banker in the biotech industry. (Ex. 88, at 45).
- Mounir ("Michael") Kara told Defendant that his brother, Maher Kara, was the source of the trading tips Mounir gave Defendant. (Testimony of Michael Kara, p.55:11-21 ("Q: Did you inform any of those persons that your information was coming from your brother, Maher Kara? A: Yes.")).
- Mounir Kara testified that Defendant, upon learning that Maher Kara was the source of the information, told him that they had to "protect" Maher. (Testimony of Michael Kara, p. 131:3-19).
- The trades forming the basis of the indictment were made close in time to major corporate announcements that caused the price of the purchased stocks to increase. (*See, e.g.*, Testimony of Special Agent Jeffrey Chisholm, p. 103:12 - 104:8).
- Despite Defendant having his own trading account at Charles Schwab (Ex. 144), the trades at issue were executed through a Comerica Securities account held in the name of his brother-in-law, Karrim Bayyouk (Ex. 171), from which Defendant benefitted.

As to Defendant's knowledge that Maher Kara received a personal benefit from his disclosure of material, non-public information, the government adduced evidence at trial that Michael Kara and Mounir Kara were brothers with a very close relationship. (*See, e.g.*, Testimony of Michael Kara, p.14:2-15). It is also clear that the Defendant was close to the family, having married the sister of Maher and Mounir Kara. "Personal benefit to the tipper is broadly defined: it includes not only 'pecuniary gain,' such as a cut of the take or a gratuity from the tippee, but also a 'reputational benefit' or the benefit one would obtain from simply 'mak[ing] a gift of confidential information to a trading relative or friend.'" *S.E.C. v. Obus*, 693 F.3d 276, 285 (2d Cir. 2012) (quoting *Dirks*, 463 U.S. at 663-64). In light of the evidence suggesting that defendant was aware that Michael Kara and Mounir Kara were brothers, knew the family, and was aware that Maher Kara was the source of the material, non-public information given to his brother, the Court concludes

there was sufficient circumstantial evidence showing Defendant knew that Maher Kara received a benefit from his disclosures.

Accordingly, the evidence at admitted at trial does not preponderate against the verdict, and Defendant is not entitled to a new trial. *See Kellington*, 217 F.3d at 1087.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for a new trial pursuant to Fed. R. Crim. P. 33 is **DENIED**.

This order disposes of Docket No. 262.

IT IS SO ORDERED.

Dated:  December 17, 2013

_____
EDWARD M. CHEN
United States District Judge