MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

ADAM A. REEVES (NYBN 2363877)
ROBERT S. LEACH (CABN 196191)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   Fax: (415) 436-7234
   Adam.Reeves@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR 11-0625 EMC |
|      Plaintiff, | ) ) | UNITED STATES' |
| v. | ) ) | SENTENCING MEMORANDUM |
| | ) | Date:   April 9, 2014 |
| BASSAM YACOUB SALMAN, | ) | Time:  2:15 p.m. |
|      Defendant. | ) ) | Court: Hon. Edward M. Chen |
| _____ | ) | |

## INTRODUCTION

The United States respectfully submits this Sentencing Memorandum pursuant to Federal Rule of

Criminal Procedure 32 and Criminal Local Rule 32-5.  On September 1, 2011, defendant Bassam

Yacoub Salman was charged in an Indictment with violations of 18 U.S.C. § 371 (Conspiracy to

Commit Securities Fraud); 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. §§ 240.10b-5 and 240.10b5-2

(Securities Fraud); and 18 U.S.C. § 2 (Aiding and Abetting).  The Indictment also sought criminal

forfeiture pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C).  On September 30, 2013, after

UNITED STATES' SENTENCING MEMORANDUM,
*United States v. Bassam Salman*, Case No. CR 11-0625 EMC

1  a two week trial, the jury returned a verdict finding the defendant, Bassam Yacoub Salman, guilty on all
2  counts of the above-captioned Indictment.  On April 9, 2014, the Court will sentence the defendant for
3  these offenses.

4       Between 2004 and 2007, the defendant made approximately $1,185,368.91 in illegal profits from
5  his insider trading scheme in the four securities specified in Count One of the Indictment.  *See United*
6  *States v. Salman* Trial Exhibit 78 (attached) (sum of net profit from trading in Bone Care International,
7  Inc., Andrx Corp., United Surgical Partners, and Biosite, Inc.); *see also United States v. Bayyouk* Trial
8  Exhibit 82 (attached).  From the very beginning, Bassam Salman took elaborate precautions to prevent
9  getting caught by carefully concealing his trading in the name of his brother-in-law, Karim Bayyouk.
10 *See* Trial Exhibits 87 and 418.  Unlike others involved in this insider trading ring, the defendant has not
11 accepted responsibility for his criminal wrongdoing.  By so doing, the defendant has effectively shielded
12 his confederate, Karim Bayyouk, from responsibility for their illegal trading and diminished the ability
13 of the government to forfeit Salman's illegal profits held in Bayyouk's name.  These factors weigh
14 against countervailing considerations that might otherwise favor a sentence below the applicable
15 guidelines.

16      For these reasons, at the sentencing hearing, the government will request that the Court impose a
17 sentence, consistent with the United States Sentencing Guidelines ("U.S.S.G."), of a term of
18 imprisonment of 57 months and a five-year term of supervised release and order restitution to victims in
19 the amount of $738,539.42 and asset forfeiture of the remaining amount of his illegally obtained profits
20 in the amount of $446,829.50 and a special assessment of $100.

21      **SUMMARY OF THE OFFENSE CONDUCT**

22      As the Court knows well from the trials of *United States v. Salman* and *United States v. Bayyouk*,
23 this was an insider trading scheme that was successfully carried out over three years and involved as
24 many as eight (8) different publicly-traded securities.  In this case, the defendant illegally capitalized on
25 the wealth and success of one of his family's proudest members, his brother-in-law, Maher Kara, then an
26 investment banker with Citigroup in New York.  *See generally* Trial Exhibit 1 (attached).  The evidence
27
28 UNITED STATES' SENTENCING MEMORANDUM,
*United States v. Bassam Salman*, Case No. CR 11-0625 EMC

at trial showed how, time and again, extremely valuable and confidential information at Citigroup about takeovers and other significant corporate transactions relating to publicly-traded companies passed from Maher Kara to his brother Michael Kara, and from Michael Kara to the defendant, Bassam Salman. *See* Trial Exhibit 78 (attached).  In an act that starkly defined the defendant's elaborate plan to conceal his wrongdoing, Bassam Salman carefully hid his illegal securities trading by using his other brother-in-law, Karim Bayyouk, as his secret trading partner. *See* Trial Exhibits 87 and 418.

Most of the defendant's illegal profits came from one massively-successful piece of insider information:  Biosite.  In late March 2007, Maher Kara called Michael Kara and secretly tipped Michael Kara about an imminent corporate acquisition by Citigroup's client, Beckman Coulter, of a biotech company called Biosite.  Within hours, telephone and trading records show that Michael Kara called Bassam Salman and Bassam Salman called Karim Bayyouk and Karim Bayyouk began buying Biosite options. *See* Trial Exhibit 420 (attached).  The defendant, through Karim Bayyouk, invested over $100,000 in Biosite, a company he had never invested in before and would never invest in again.  And it paid off.  Before the next trading day, Beckman Coulter publicly-announced it would buy Biosite and Biosite's stock price sky-rocketed, earning Bassam Salman nearly $1 million in trading profits over night.

Unfortunately for the defendant, his timing was too good to escape attention.  In April 2007, the United States Securities and Exchange Commission ("SEC") quickly began to investigate why some traders -- like the defendant's secret trading partner Karim Bayyouk – bought options in Biosite before the takeover announcement.  As part of its investigation, the SEC called Karim Bayyouk and asked him why he invested in Biosite when he did.  Karim Bayyouk lied to the SEC about why he was trading in Biosite and – critically – whether he was trading with other persons.  A truthful answer by Karim Bayyouk would have revealed Bassam Salman's secret role in their scheme.  But it also would have risked the more than $1.1 million in illegal trading profits they had acquired.

As a result, today, Bassam Salman has been convicted of multiple counts of securities fraud but Karim Bayyouk has been convicted of only one count of obstruction of justice.  Justice requires the

UNITED STATES' SENTENCING MEMORANDUM,
*United States v. Bassam Salman*, Case No. CR 11-0625 EMC

1   defendants not profit from their crimes.  To do that, the $1.1 million in illegal insider trading profits

2   shared by Bassam Salman and Karim Bayyouk must be repaid as restitution or otherwise forfeited.

3   Given the relevant convictions, however, the government respectfully submits that, in order to achieve

4   this just result, the Court will need to order Bassam Salman – not Karim Bayyouk – to pay restitution

5   and forfeiture in the amount of $1.1 million.

6   **GUIDELINES CALCULATION**

7       The application of the United States Sentencing guidelines ("U.S.S.G.") to the facts and

8   circumstances of this case are not complicated.  The United States Probation Office calculated them

9   correctly in the Amended Presentence Report ("PSR") dated March 31, 2014:

10       a.  Base Offense Level, U.S.S.G. § 2B1.4(a)        + 8

11
12       b.  Specific Offense Characteristic,
          U.S.S.G. § 2B1.1(I) (gain over $1 million)    + 16

13       c.  Total Offense Level                    = 24

14   PSR at 20-21.  With a Criminal History Category I, the defendant's resulting guideline sentencing range

15   is a term of imprisonment of 51 to 63 months.

16   **ARGUMENT**

17   I.     **THE COURT IS ENCOURAGED TO IMPOSE A GUIDELINE SENTENCE**

18       The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect

19   the seriousness of the offense, promote respect for the law, and provide just punishment; to afford

20   adequate deterrence; to protect the public; and to provide the defendant with needed education or

21   vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d

22   1069, 1088-89 (9th Cir. 2012) (*en banc*); 18 U.S.C. § 3553(a)(2).  The Court should begin the

23   sentencing process by correctly calculating the applicable Guidelines range and must "remain cognizant

24   of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).  The

25   Court should then consider the factors outlined in 18 U.S.C. § 3553(a) to determine the appropriate

26
27
28   UNITED STATES' SENTENCING MEMORANDUM,
    *United States v. Bassam Salman*, Case No. CR 11-0625 EMC

1   sentence. *Ressam*, 679 F.3d at 1089.[1]  If the Court determines that a sentence outside of the Guidelines

2   range is warranted, it must ensure that the "justification is sufficiently compelling to support the degree

3   of the variance." *Id.* (internal quotation omitted).  "[A] major departure should be supported by a more

4   significant justification than a minor one." *Gall*, 552 U.S. at 50.

## II.   18 U.S.C. § 3553(a) DOES NOT WARRANT A DEPARTURE FROM THE GUIDELINES

### 1.   The Nature of the Offenses

7        Insider trading is a "sophisticated fraud."  U.S. SENTENCING GUIDELINES MANUAL § 2B1.4

8   applic. note 2 (2012).  It undermines confidence in the integrity of the financial markets, disadvantages

9   ordinary investors who follow the rules, and violates the confidence of companies whose information is

10  misappropriated.  Because it is a serious breach of trust, and because of its damaging effects, insider

11  trading calls for a substantial sentence. *See United States v. O'Hagan*, 521 U.S. 642, 659 (1997) (noting

12  the "inhibiting impact on market participation of trading on misappropriated information"); *United*

13  *States v. Goffer*, 721 F.3d 113, 132 (2d Cir. 2013) (stating an insider trading defendant's "corrosive

14  influence on the integrity of the financial markets and on the expectation of trust and confidence . . .

15  required a significant punishment" and affirming a 120-month sentence).

16       The defendant's offenses are serious.  They were not a momentary lapse of judgment.  They

17  were a series of deliberate choices driven by greed and a conscious disrespect for the law over the course

18  of several years.  The considerations of 18 U.S.C. § 3553(a)(2)(A) warrant a guideline sentence.

---

[1]      Those factors include (1) the nature and circumstances of the offense and the history and
characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of
the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford
adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant;
and (D) to provide the defendant with needed educational or vocations training, medical care, or other
correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of
sentence and the sentencing range established in the Guidelines; (5) any pertinent policy statement by
the Sentencing Commission; (6) the need to avoid unwarranted disparities among defendants with
similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to
any victims. *See* 18 U.S.C. § 3553(a)(1)-(7).

UNITED STATES' SENTENCING MEMORANDUM,
*United States v. Bassam Salman*, Case No. CR 11-0625 EMC

1    **2.  The Need For General Deterrence**

2           In an insider trading case, the need for general deterrence is great.  Notwithstanding his many

3    successes in life, Bassam Salman effectively stole $1.1 million from other public investors and carefully

4    schemed to conceal his wrongdoing and in so doing thwart any punishment and keep all his illegal

5    profits.  Lenient sentences, especially where there has been no cooperation or meaningful acceptance of

6    responsibility, risk encouraging persons tempted to cheat using inside information to roll the dice and

7    they feed the harmful perception that investing in our public markets is rigged to favor select insiders.

8           "[I]nsider trading is an easy crime to commit but a difficult crime to detect.  Others similarly

9    situated to the defendant must therefore be made to understand that when you get caught, you will go to

10   jail."  *United States v. Gupta*, 904 F. Supp. 2d 349, 355 (S.D.N.Y. 2012); *see also Goffer*, 721 F.3d at

11   132 ("The district court's assertion that insider trading requires high sentences to alter that calculus [that

12   insider trading is a "game worth playing"] is a Congressionally-approved example of giving meaning to

13   the 18 U.S.C. § 3553(a) factors.").  Here "[c]onsiderations of (general) deterrence argue for punishing

14   more heavily those offenses that either are lucrative or are difficult to detect and punish, since both

15   attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."

16   *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) (Posner, J.) (discussing sentencing in bid

17   rigging case); *see also United States v. Kluger*, 722 F.3d 549, 561 (3d Cir. 2013) (noting that a sentence

18   in an insider trading case was "likely to come to the attention of would-be insider traders").

19          For these reasons, the considerations of 18 U.S.C. § 3553(a)(2)(B) and the need for meaningful

20   general deterrence favor a guideline sentence.

21   **3.  The Need to Avoid Unwarranted Sentencing Disparities**

22          The need to avoid unwarranted sentence disparities and the considerations of 18 U.S.C. §

23   3553(6) also weigh in favor of imposing a multi-year prison sentence in this case.

24          The following sentences in insider trading schemes demonstrate that efforts of courts across the

25   country to achieve the goals of general deterrence by imposing multi-year sentences of imprisonment.

26   *See* Judgment in a Criminal Case with Supervised Release at 2, *United States v. Liang*, No. 8:11-cr-530-

27

28   UNITED STATES' SENTENCING MEMORANDUM,
     *United States v. Bassam Salman*, Case No. CR 11-0625 EMC

1  DKC (D. Md. Mar. 5, 2012), ECF No. 55 (sentencing a former FDA employee to 60 months, within the

2  Guidelines range of 57 to 71 months, in a $3.7 million insider trading scheme); Judgment in a Criminal

3  Case at 2, *United States v. Cutillo*, No. 10 Cr. 56 (RJS) (S.D.N.Y July 1, 2011), ECF No. 220

4  (sentencing a former Ropes & Gray attorney to 30 months, within the Guidelines range of 30 to 37

5  months, in an insider trading scheme with $378,000 in foreseeable profits); Judgment in a Criminal Case

6  at 2, *United States v. Johnson*, No. 1:11 CR 254 (E.D. Va. Aug. 12, 2011), ECF No. 20 (sentencing a

7  former NASDAQ employee to 42 months, within the Guidelines range of 37 to 46 months, in a

8  $641,000 insider trading scheme); and Judgment in a Criminal Case at 2, *United States v. Sebbag*, No.

9  10 Cr. 753 (KMW) (S.D.N.Y Feb. 8, 2011), ECF No. 28 (sentencing the boyfriend of a former Walt

10  Disney Company secretary to 27 months, within the Guidelines range of 27 to 33 months, in a

11  conspiracy to commit insider trading). *See generally 2013 Insider Trading Annual Review* by Morrison

12  Forester at Appendix A (citing insider trading cases in 2013) (copy available to the Court and counsel on

13  request).

14        By correctly calculating and carefully reviewing the guidelines range, a court necessarily gives

15  weight and consideration to the need to avoid unwarranted disparities.  In other words, a sentence within

16  the guidelines range necessarily complies with Section 3553(a)(6).  *See United States v. Reyes-Medina*,

17  683 F.3d 837, 841 (7th Cir. 2012).

18  **III.    THE DEFENDANT SHOULD PAY RESTITUTION**

19        The Mandatory Victims Restitution Act of 1996 (the "MVRA") provides that "when sentencing

20  a defendant convicted of an offense described in [§ 3663A(c)], the court shall order . . . that the

21  defendant make restitution to the victim of the offense."  18 U.S.C. § 3663A(a)(1).  A "victim" is "a

22  person directly and proximately harmed as a result of the commission of an offense for which restitution

23  may be ordered."  *Id.* § 3663A(a)(2).  The MVRA applies to cases of an offense resulting in damage to

24  or loss or destruction of property of a victim.  *Id.* § 3663A(b)(1).

25        As the testimony at trial demonstrated, Citadel LLC was the victim of the defendant's scheme to

26  buy Biosite options based on the material non-public information he obtained from Maher Kara through

27

28  UNITED STATES' SENTENCING MEMORANDUM,
*United States v. Bassam Salman*, Case No. CR 11-0625 EMC

1   Michael Kara.  The amount of the required restitution is $738,539.42.  PSR at 33.  Pursuant to the

2   Mandatory Victims Restitution Act, the Court should order the defendant to pay Citadel LLC restitution

3   in that amount.

4   **IV.    THE COURT SHOULD ORDER ASSET FORFEITURE**

5          The Indictment included asset forfeiture allegations (Indictment at 9-10) based on 28 U.S.C. §

6   2461(c) and 18 U.S.C. § 981(a)(1)(C).  These statutes provide for the criminal forfeiture of any property,

7   real or personal, which constitutes or is derived from proceeds traceable to the violation of an offense

8   constituting a "specified unlawful activity," or a conspiracy to commit such an offense.  Fraud in the

9   sale of securities is a specified unlawful activity pursuant to 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1).

10         Criminal forfeiture is not a substantive criminal offense; rather, it is an aspect of punishment and

11  therefore a part of sentencing.  *Libretti v. United States*, 516 U.S. 29 (1995).  Because criminal forfeiture

12  is part of sentencing, the government need only establish the forfeiture by a preponderance of the

13  evidence.  *United States v. Garcia-Guizar*, 160 F.3d 511 (9th Cir. 1998).  Furthermore, forfeiture is

14  mandatory.  *See United States v. Monsanto*, 491 U.S. 600, 606 (1989); *United States v. Davis*, 706 F.3d

15  1081, 1084 (9th Cir. 2013).

16         Rule 32.2 (b)(1) of the Federal Rules of Criminal Procedure provides that as soon as practicable

17  after entering a guilty verdict on any count in an indictment with regard to which criminal forfeiture is

18  sought, the Court shall determine what property is subject to forfeiture under the applicable statute.  If

19  the government seeks a personal money judgment against the defendant, the Court shall determine the

20  amount of money that the defendant will be ordered to pay.  Rule 32.2(b)(1)(A).  The court's

21  determination may be based on evidence already in the record, or on evidence or information presented

22  by the parties at a hearing after the verdict or finding of guilt.  Pursuant to Rule 32.2(b)(2), if the court

23  finds that property is subject to forfeiture, it shall promptly enter a preliminary order of forfeiture setting

24  forth the amount of any money judgment or directing the forfeiture of specific property without regard

25  to any third party's interest in all or part of it.  Determining whether a third party has such an interest

26  shall be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

27

28  UNITED STATES' SENTENCING MEMORANDUM,
    *United States v. Bassam Salman*, Case No. CR 11-0625 EMC

1       Rule 32.2(b)(3) further provides that the entry of a preliminary order of forfeiture authorizes the

2   Attorney General (or a designee) to seize the specific property subject to forfeiture; to conduct any

3   discovery the court considers proper in identifying, locating, or disposing of the property; and to

4   commence proceedings that comply with any statutes governing third party rights.  At the sentencing

5   hearing, or at any time before sentencing if the defendant consents, the order of forfeiture becomes final

6   as to the defendant and shall be made part of the sentence and included in the judgment.  The court may

7   include in the order of forfeiture conditions reasonably necessary to preserve the property's value

8   pending any appeal.

9       The government therefore requests an order of forfeiture and personal money judgment against

10   the defendant in the amount of $446,829.49.  That amount represents the total illegal gain to the

11   defendant from his insider trading scheme ($1,185,368.91) less the amount the government recommends

12   that the defendant be ordered to pay as restitution to his victims ($738,539.42).

13   **SENTENCING RECOMMENDATION**

14       For these reasons, the government respectfully requests that, consistent with the Sentencing

15   Guidelines, the Court impose a 57 month term of imprisonment and a five-year term of supervised

16   release and order restitution to victims in the amount of $738,539.42 and asset forfeiture in the amount

17   of $446,829.49 to insure that this defendant is justly punished and does not profit from his crimes.

18   DATED: April 2, 2014          Respectfully submitted,

19

20             MELINDA HAAG
          United States Attorney

21

22             /s/

23             _____
          ADAM A. REEVES
          ROBERT S. LEACH
          Assistant United States Attorneys

24

25

26

27

28   UNITED STATES' SENTENCING MEMORANDUM,
*United States v. Bassam Salman*, Case No. CR 11-0625 EMC



EXH 001-0001

Summary of Trading in Various Securities

| | Company | Citigroup | Telephone Records: Maher Kara to Michael Kara | Telephone Records: Michael Kara to Salman | Telephone Records: Salman to Bayyouk | Date Kara into Position | Date Bayyouk into Position | Type of Position | Public Announcement | Date Bayyouk Left Position | Net Profit |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PROTEIN DESIGN LAB (name later changed to P D L BIOPHARMA) | Citigroup advising ESP Pharma on its acquisition by PDLI. Additionally, Citigroup advising PDLI in convertible offering to help finance the acquisition. *(Exhibits 238, 241)* | 1/21/2005 *(Exhibit 246)* | None | 2/5/2005 *(Exhibit 153)* | 1/24/2005 *(Exhibits 165,166)* | 2/7/2005 *(Exhibit 171)* | Puts *(Exhibit 171)* | 1/25/2005 *(Exhibits 393, 394)* ; 2/7/2005 *(Exhibits 395, 396)* | 2/8/2005 *(Exhibit 171)* | $5,959.48 *(Exhibits 171, 79)* |
| 2 | BONE CARE INTERNATIONAL INC | Citigroup advising Bone Care on its acquisition by Genzyme. *(Exhibits 247, 248)* | 4/28/2005 *(Exhibit 154)* | 4/28/2005 *(Exhibit 154)* | 4/29/2005 *(Exhibit 177)* | 5/2/2005 *(Exhibit 166)* | 5/2/2005 *(Exhibit 171)* | Stock *(Exhibit 171)* | 5/4/2005 *(Exhibit 251)* | 5/6/2005 *(Exhibit 171)* | $6,263.76 *(Exhibits 171, 79)* |
| 3 | ENDO PHARMA HOLDINGS | Citigroup advising Endo on a potential acquisition by Teva. *(Exhibit 259)* | 6/17/2005 *(Exhibit 154)* | 6/17/2005 *(Exhibit 154)* | 6/20/2005 *(Exhibit 153)* | 6/21/2005 *(Exhibit 165)* | 6/21/2005 *(Exhibit 171)* | Calls *(Exhibit 171)* | Not Applicable | 8/31/2005 *(Exhibit 171)* | $12,194.60 *(Exhibits 171, 79)* |
| 4 | ANDRX CORP | Citigroup advising Wockhardt on a potential acquisition of Andrx. *(Exhibits 290, 296)* | 2/14/2006 *(Exhibit 154)* | 2/22/2006 *(Exhibit 154)* | 2/23/2006 *(Exhibit 153)* | 2/24/2006 *(Exhibits 165,166)* | 2/24/2006 *(Exhibit 171)* | Calls and stock *(Exhibit 171)* | 3/13/2006 *(Exhibits 397, 398)* | 1/19/2007 *(Exhibit 171)* | $225,872.78 *(Exhibits 171, 79)* |
| 5 | UNITED SURGICAL PARTNERS | Citigroup advising Welsh Carlson in a private equity buyout of USPI. *(Exhibits 19, 314, 317)* | 8/5/2006 *(Exhibit 329)* | 8/7/2006 *(Exhibit 329)* | 8/9/2006 *(Exhibit 153)* | 8/8/2006 *(Exhibits 165,166)* | 8/9/2006 *(Exhibit 171)* | Calls and stock *(Exhibit 171)* | 1/8/2007 *(Exhibits 401, 402)* | 2/5/2007 *(Exhibit 171)* | $5,239.60 *(Exhibits 171, 79)* |
| 6 | P D L BIOPHARMA | Citigroup advising Schering-Plough on a potential acquisition of PDL Biopharma. *(Exhibits 344, 347)* | 1/6/2007 *(Exhibit 335)* | 1/7/2007 *(Exhibit 154)* | 1/8/2007 *(Exhibit 155)* | 2/16/2007 *(Exhibits 165,166)* | 1/8/2007 *(Exhibit 171)* | Calls *(Exhibit 171)* | Not Applicable | 12/5/2007 *(Exhibit 171)* | $204,865.89 *(Exhibits 171, 79)* |
| 7 | BIOSITE INC | Citigroup providing financing to Beckman Coulter for a potential acquisition of Biosite. *(Exhibits 9, 12)* | 3/22/2007 *(Exhibit 374)* | 3/22/2007 *(Exhibit 374)* | 3/22/2007 *(Exhibits 414, 415)* | 3/22/2007 *(Exhibit 165)* | 3/23/2007 *(Exhibit 171)* | Calls *(Exhibit 171)* | 3/25/2007 *(Exhibits 403, 404, 405)* | 3/28/2007 *(Exhibit 171)* | $947,992.77 *(Exhibits 171, 79)* |
| 8 | ALEXION PHARMA INC | Citigroup advising Novo Nordisk on a potential acquisition of Alexion. *(Exhibit 375)* | 3/24/2007 *(Exhibit 374)* | 4/5/2007 *(Exhibit 155)* | 4/5/2007 *(Exhibit 153)* | 3/26/2007 *(Exhibit 165)* | 4/5/2007 *(Exhibit 171)* | Calls *(Exhibit 171)* | Not Applicable | 12/13/2007 *(Exhibit 171)* | $49,389.65 *(Exhibits 171, 79)* |

**Total Net Profits**  $1,457,778.53

**EXH 078-0001**

Summary Regarding Michael Kara and Bassam Salman / Karim Bayyouk Trading in Various Securities

| | Company | Description of Citigroup Involvement | Date of Contact Maher Kara to Michael Kara | Date of Contact Michael Kara to Salman | Date of Contact Salman to K. Bayyouk | Date Kara into Position | Date K. Bayyouk into Position | Type of Position | Date of Public Announcement | Date left Position | Net Profit |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BONE CARE INTERNATIONAL INC | Citigroup advising Bone Care on its acquisition by Genzyme. *(Exhibits 247, 248, 249)* | 4/28/2005 *(Exhibit 154)* | 4/28/2005 *(Exhibit 154)* | 4/29/2005 *(Exhibit 177)* | 5/2/2005 *(Exhibit 166)* | 5/2/2005 *(Exhibit 171)* | Stock *(Exhibit 171)* | 5/4/2005 *(Exhibit 251)* | 5/6/2005 *(Exhibit 171)* | $6,263.76 *(Exhibits 171, 79)* |
| 2 | ANDRX CORP | Citigroup advising Wockhardt on a potential acquisition of Andrx. *(Exhibits 289, 290, 295, 296, 298, 299)* | 2/14/2006 *(Exhibit 154)* | 2/22/2006 *(Exhibit 154)* | 2/23/2006 *(Exhibit 153)* | 2/24/2006 *(Exhibits 165, 166)* | 2/24/2006 *(Exhibit 171)* | Calls and stock *(Exhibit 171)* | 3/13/2006 *(Exhibits 397, 398)* | 1/19/2007 *(Exhibit 171)* | $225,872.78 *(Exhibits 171, 79)* |
| 3 | UNITED SURGICAL PARTNERS | Citigroup advising Welsh Carlson in a private equity buyout of USPI. *(Exhibit 317)* | 8/5/2006 *(Exhibit 329)* | 8/7/2006 *(Exhibit 329)* | 8/9/2006 *(Exhibit 153)* | 8/8/2006 *(Exhibits 165, 166)* | 8/9/2006 *(Exhibit 171)* | Calls and stock *(Exhibit 171)* | 1/8/2007 *(Exhibits 401, 402)* | 2/5/2007 *(Exhibit 171)* | $5,239.60 *(Exhibits 171, 79)* |
| 4 | BIOSITE INC | Citigroup providing financing to Beckman Coulter for a potential acquisition of Biosite. *(Exhibits 9, 12)* | 3/22/2007 *(Exhibit 374)* | 3/22/2007 *(Exhibit 374)* | 3/22/2007 *(Exhibits 414, 415)* | 3/22/2007 *(Exhibit 165)* | 3/23/2007 *(Exhibit 171)* | Calls *(Exhibit 171)* | 3/25/2007 *(Exhibits 403, 405)* | 3/28/2007 *(Exhibit 171)* | $947,992.77 *(Exhibits 171, 79)* |

**EXH 082-0001**

## Listing of Karim Bayyouk's Common Investments with Bassam Salman & Michael Kara for Securities Purchased January 2004 through April 2007[1]

| | Company | K Bayyouk Date of First Trade | Salman Date of First Trade | Kara Date of First Trade |
|---|---|---|---|---|
| 1 | AMYLIN PHARM INC | 11/29/2004 | | 11/9/2004 |
| 2 | ENCYSIVE | 1/18/2005 | | 12/21/2004 |
| 3 | PROTEIN DESIGN LABS INC. (AKA PDL BIOPHARMA INC.) | 2/7/2005 | | 1/24/2005 |
| 4 | MILLENNIUM PHARM INC | 2/14/2005 | | |
| 5 | BIOGEN IDEC INC | 3/3/2005 | | 2/28/2005 |
| 6 | ELAN CORP | 3/3/2005 | | 2/28/2005 |
| 7 | PAIN THERAPEUTICS INC | 3/23/2005 | | 5/18/2004 |
| 8 | BONE CARE INTL INC | 5/2/2005 | | 5/2/2005 |
| 9 | AMERICAN PHARMACEUTICAL PARTNERS (APPX) | 5/6/2005 | | 4/21/2004 |
| 10 | ENDO PHARMACEUTICALS | 6/21/2005 | | 4/23/2004 |
| 11 | CELGENE CORP | 7/8/2005 | | 7/7/2005 |
| 12 | SUN MICROSYSTEMS | 10/4/2005 | 10/4/2005 | |
| 13 | TOTAL S A | 10/5/2005 | | |
| 14 | GENENTECH INC | 10/11/2005 | 12/14/2005 | 6/7/2004 |
| 15 | CEPHALON INC | 10/17/2005 | | 12/2/2004 |
| 16 | PETROKAZAHSTAN INC | 10/18/2005 | 8/22/2005 | |
| 17 | AMGEN INC | 11/22/2005 | | 10/6/2005 |
| 18 | GOOGLE INC | 11/22/2005 | 11/23/2005 | |
| 19 | MICROSOFT CORP | 11/22/2005 | 11/7/2005 | |
| 20 | SIRIUS SATELLITE | 12/9/2005 | 12/9/2005 | |
| 21 | AUCTION MILLS INC | 12/9/2005 | 2/13/2006 | |
| 22 | XECHEM INTL INC | 12/9/2005 | | |
| 23 | ANDRX CORP | 2/24/2006 | | 2/24/2006 |
| 24 | SERONO SA SPONS ADR | 3/1/2006 | | |
| 25 | HUMAN BIOSYSTEMS | 3/31/2006 | | |
| 26 | HEALTH NET INC COM | 4/7/2006 | | 4/6/2006 |
| 27 | NEUROCRINE | 5/15/2006 | | 5/12/2006 |
| 28 | HCA INC | 7/18/2006 | | 7/21/2006 |
| 29 | PANACOS | 7/24/2006 | | |
| 30 | UNITED SURGICAL PRTNRS INTL | 8/9/2006 | | 8/8/2006 |
| 31 | UNICORP INC | 8/15/2006 | 8/18/2005 | |
| 32 | SYMBION INC | 10/27/2006 | | |
| 33 | BIOSITE INC | 3/23/2007 | | 3/22/2007 |
| 34 | ALEXION PHARM INC | 4/5/2007 | | 3/26/2007 |

Footnotes:
[1] Source:  Michael Kara's Schwab brokerage records (Exhibit 165); Emile Jilwan's Fidelity/ Schwab brokerage records  (Exhibit 166); Karim Bayyouk's Comerica Securities brokerage records (Exhibit 171); Karim Bayyouk's Schwab brokerage  records (Exhibit 172); Bassam Salman's Charles Schwab brokerage records (Exhibit 173); and SEC Announcement re: settlement dates (Exhibit 91).



# Money In and Out of Karim Bayyouk's Comerica Accounts

## Money In
$396K

- Bayyouk Pays $136K
- Salman Pays $260K

## Money Out
$2.1 Million

- Bayyouk Receives $861K (net of taxes)
- Salman Receives $711K
- Taxes Paid $502K

**EXH 418-0001**

**EXH 420**

All times are Pacific Daylight Time



Chronology re: Trading in Biosite, Inc. ("BSTE")